FERDINAND CLARK, APPELLANT, *v.* BENJAMIN C. CLARK AND WILLIAM H. Y. HACKETT.

Where a person took the benefit of the bankrupt law of the United States; omitted, in first schedule of property, to take any notice of a claim which he had against the Mexican Republic, for the unlawful seizure of the cargo of a vessel; filed an amended schedule, in which he mentioned the claim so indistinctly as to give no information of its value, although he was then prosecuting it before the board of commissioners; concealed the evidence of the property, so that the assignee in bankruptcy reported that it was of no value, and sold the whole, for a nominal consideration, to the sister of the bankrupt, who afterwards transferred it to him; the purchase was fraudulent, under the 4th section of the bankrupt law, and also by the general principles of equity.

Where a creditor of the bankrupt filed his bill, and gave his bond within thirty days after the award of the board of commissioners, this was sufficient within the 8th section of the act of March 3, 1849, to carry into effect our treaty with Mexico.

The creditor was a *cestui que trust* of the fund, and had a right to intervene, as the assignee in bankruptcy was dead. This was sufficient to give jurisdiction to the court. His not having proved his debt did not debar him of this right. Another assignee was appointed, and filed his claim without loss of time.

The 8th section of the bankrupt law, limiting actions to two years after the bankruptcy, relates only to suits brought against persons who have claims to property, or rights of property surrendered by the bankrupt. And, moreover, no right of action accrued until the fund existed

THIS was an appeal from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

Ferdinand Clark, the appellant, prosecuted a claim before the commissioners who acted under the treaty between the United States and Mexico, which claim was for the unlawful seizure of the cargo of a vessel called The Louisiana. The commissioners awarded to him $86,786.29; out of which there was deducted, by agreement, a sum of money, as compensation to the agents employed in its recovery, leaving $69,429.04.

The award was made on the 15th of April, 1851, and, on the 15th of May following, Benjamin C. Clark, of Boston, filed a creditor's bill in the circuit court of the United States for the District of Columbia, claiming the fund, for himself and other creditors of Ferdinand Clark, who had taken the benefit of the bankrupt law of the United States, on the 22d March, 1843, in the State of New Hampshire. Soon after this bill was filed, namely, on the 30th May, Hackett, the then assignee in bankruptcy of Ferdinand Clark, filed his bill, also claiming the entire fund, for the purpose of distribution amongst the creditors; Palmer, the original assignee in bankruptcy, had died, and Hackett was appointed in his place.

The substance of Hackett's bill was as follows: —

In this bill, Hackett sets forth his appointment as assignee, in

place of Palmer, deceased, and prays for leave to come in, under the prayer of the original bill of B. C. Clark, and to be made complainant in said cause. He then avers that Ferdinand Clark was duly and regularly declared a bankrupt, in 1843, and that all his property and effects passed out of the bankrupt, and vested in the assignee, Palmer, who was regularly appointed, and is since dead, leaving the proceeding in bankruptcy still pending.; that the bankrupt had, among his assets, a claim on the Republic of Mexico, which is the claim in satisfaction of which the award in controversy was made; that the said claim was not described in any manner to make the same available to his creditors, and that no such evidences as would enable him to recover said claim were put into the hands of the assignee; and that the assignee was ignorant of the true value of the assets; and that he, therefore, reported them to the court as of no value; that no right, title, or interest in said claim, ever passed out of said assignee, or became revested in said bankrupt; that said bankrupt had since prosecuted said claim, in his own right, falsely and fraudulently claiming that his debts in bankruptcy had been satisfied, and that said claim had revested in him; that the amount of said award legally belongs to complainant, as assignee. The complainant then submits, that the said Benjamin C. Clark and others, the creditors of said Ferdinand at the date of his bankruptcy, being in the condition of *cestuis que trust* whose trustee is dead, have complied with the true intent and meaning of the act of congress. Prayer for an injunction and general relief.

The answer to this bill, amongst other things, —

Admits that defendant had among his assets a claim against Mexico, and that the claim on which the award was made is the same; admits that said claim was set down in the schedule, but denies that it was not described so as to make the same available to his creditors; and he expressly and particularly denies that such evidences and information as would have enabled said assignee to recover said claim were fraudulently withheld by this defendant, and denies that his assets and effects generally were so described in his schedules that the assignee was in ignorance of their true value; avers that this Mexican claim was expressly mentioned in said schedule, in the manner demanded by the rules and practice of the district court of New Hampshire; that said claim was mentioned as subject to a mortgage.; that such mortgage did exist, in fact; that he did not know the amount thereof, but verily believed it to be more than the value of the claim; that no value was set to said claim, because he believed, and had reason to believe, that said claim was wholly without value · that defendant com-

municated to Palmer, the assignee, the situation of all the claims mentioned in his schedules; that all the papers and evidences in support of said Mexican claim were not in his possession, but had been, in the year 1842 or earlier, filed publicly before the commissioners appointed under the convention of April 11, 1839, and were afterwards placed, and, at the time of the commencement of the proceedings in bankruptcy, were in the public archives of the government of the United States, and there remained till the time of said award.

The defendant then sets forth more particularly the bankrupt proceedings up to his discharge, on the 17th December, 1844, from all debts then owing by him. He states that notice of the proceedings in bankruptcy was published in the leading papers in the district, and that notice, personally and by letter, was also served on all creditors, whose residence was known; that, notwithstanding this, no creditor ever filed in the district court any proof of debt, or any objections to the proceedings in bankruptcy, or to the doings of the assignee, until after the award was made.

The answer then avers, that on the 14th day of March, 1845, the assignee filed a petition for an order to sell the estate of the defendant, and on the 14th it was so ordered; that, in pursuance of said order, Palmer did, on the 9th day of April, 1845, after posting up advertisements, &c., sell at public auction all the estate and demands of the bankrupt, mentioned in the schedules attached to the petition of Ferdinand Clark to be declared bankrupt, to R. M. Clark, and that, by sale, said Mexican claim passed to said R. M. Clark. And the answer denies all artifice or fraud to depress the value of said demands, or this Mexican claim particularly; that on the 9th of April, 1845, said Palmer executed a formal bill of sale, with schedules attached to it, in which schedules this Mexican claim was included; that on the 10th April, 1845, defendant purchased, for valuable consideration, all the said property from R. M. Clark, including said claim; that he has prosecuted said claim in his own name, and at his own risk and expense; that complainant has not filed his notice with the secretary, according to the provisions of the 8th section of the act of March 3, 1849.

On the 2d of June, 1851, the circuit court issued an injunction, restraining the secretary of the treasury from paying, and Ferdinand Clark from receiving, the amount of the award, until the further order of the court.

The 8th section of the act of March 3, 1849, (9 Stats. at Large, 394,) authorized any person, who claimed any part of an award, to file a bill; and directed the fund to remain in the treasury, to await the decision of the courts.

The case went on in the circuit court, and much testimony was taken. A part of it related to the proceedings in the bankrupt court of New Hampshire, which are summarily referred to in the opinion of the court, and need not be further noticed here.

On the 30th of May, 1853, the circuit court decreed that the fund should be paid over to Hackett, for distribution in the bankrupt court of New Hampshire, amongst the creditors of Ferdinand Clark.

From this decree, Clark appealed to this court.

It was argued by *Mr. Lawrence* and *Mr. Nelson*, for the appellant, and by *Mr. Carlisle* and *Mr. Johnson*, for the appellee.

The arguments consisted chiefly in the examination of, and comments upon, the facts in the case.

The following points of law were made by *Mr. Lawrence* : —

1. That B. C. Clark, the complainant in the original bill, had no standing in court at all, he being a mere general creditor at the time of bankruptcy of appellant, and his debt having been discharged by the bankruptcy and proceedings thereon.

2. That there was no privity between B. C. Clark (who had never made himself a party to the bankrupt proceedings at all) and the assignee in bankruptcy; but that Hackett, the assignee, must stand upon his own compliance with the 8th section of the act of 3d March, 1849, or else fall.

3. That the circuit court of the District of Columbia had no jurisdiction in this case, except that conferred by said 8th section. The fund was in the treasury of the United States, and the parties were non-residents. Inasmuch as Hackett, the assignee, had not given the bond nor filed the notice specified in said 8th section, upon which the jurisdiction of the court was to attach, the bill should have been dismissed.

Mr. Justice CATRON delivered the opinion of the court.

Ferdinand Clark applied for the benefit of the bankrupt law, and filed a schedule of his debts, and another of his property and rights of property. Pursuant to the latter schedule, the assignee in bankruptcy sold all Clark's interest in the property, and rights of property, at auction, for the sum of two dollars; Clark himself bidding at the sale, but ordering the title to be made by the assignee to his (Clark's) sister, who relinquished to him by a formal deed on the next day. By virtue of this purchase Clark claims to be *bonâ fide* owner of all the property, and rights of property, he had given in or indicated on his schedule.

The bill alleges that the claim against the Republic of Mexico,

for an unlawful seizure of the cargo of a vessel owned by the bankrupt, called The Louisiana, the proceeds of which are in dispute, was not described in any manner to make the same available to Clark's creditors ; nor was any such information or evidences of the claim put into possession of the assignee as would enable him to recover it, but that all the information and evidences were fraudulently withheld by said bankrupt, and that his assets and effects generally were so described in his schedule that the assignee was ignorant of their true value, and in fact reported to the court that the same could not be sold ; and that because of this fraud the sale was void.

This allegation is put in issue by the answer, and was sustained by the circuit court, which ordered the moneys awarded to Clark by the commissioners, acting under our treaty of peace with Mexico, to be paid over to the assignee in bankruptcy, and distributed by him among the bankrupt's creditors. From this decree Clark appealed.

If the right of property to the claim for indemnity was concealed so that the assets were sold for a nominal amount, and to Clark himself in the name of his sister, then Clark's purchase was fraudulent, and the decree below, setting aside the purchase, was proper. This is the rule prescribed by the 4th section of the bankrupt law ; and which rule would be enforced by the general principles governing a court of equity, independently of the bankrupt law.

In his first schedule, the bankrupt did not mention the claim against the Republic of Mexico, but in an amendment, filed in December, 1844, after he had received his discharge, this claim is alluded to in connection with others, as follows : —

" United States government of America" — Claim.
Spanish government,                              do.
Buenos Ayres government,                          do.
" Mexican Republic subject to a mortgage."

This statement gave no information that the bankrupt claimed remuneration against the government of Mexico for an illegal seizure of the cargo of the schooner Louisiana. The proof is that Clark was prosecuting this claim before he applied for the benefit of the bankrupt law, which was in January, 1843, and relied on its ultimate recognition and payment through commissioners acting under treaties with Mexico. He continued to pursue the claim, steadily and earnestly, up to the time it was allowed in 1851, when there was awarded to him $86,786_{\frac{29}{100}}$ dollars.

Clark's letters to Mr. Caustin, his agent in Washington, who prosecuted the claim, show, as does the deposition of Mr. Caustin,

also, that in December, 1844, when the amended schedule was filed, the bankrupt had a right to expect ultimate success, and did rely on it with much confidence. Clark's papers and correspondence were extensive in regard to the matter, and which must have been concealed from the assignee in bankruptcy, or he would not have reported the assets as of no value in 1845, when they were sold.

From the obscurity of the schedule, and the concealment of the evidences of a right of property from the assignee and the creditors, we feel satisfied that the bankrupt intended to rid himself of his debts, and to secure to himself the effects in dispute by contrivance, and that part of the contrivance was a purchase in the name of his sister, for his own benefit.

Some minor objections to the decree below have been raised, which it is proper to notice.

First, it is insisted that the circuit court of the District of Columbia had no jurisdiction of the parties under the act of March 3, 1849, § 8, to carry into effect our treaty with Mexico of 1848. The 8th section provides that in all cases arising under the act, where any person or persons other than those in whose favor the award was made, claimed the money awarded, should within thirty days after the date of the award notify the secretary of the treasury of his intention to contest the payment of the money to the party to whom it was awarded, and file with the district attorney a bond, &c., then the money should be retained in the treasury, subject to legal investigation in the courts of justice; and the party claiming the fund might file his bill in the circuit court in the District of Columbia, which should have jurisdiction to determine the right of property. In this instance the award was made on the 15th day of April, 1851, and on the 15th day of May following, Benjamin C. Clark, of Boston, a judgment creditor, filed his bill in the circuit court claiming the fund awarded to Ferdinand Clark, and gave the notice and bond required by the act of 1849, § 8.

This was a creditor's bill, on behalf of the complainant and all other creditors of the bankrupt, and which alleged that the complainant had reason to believe the assignee, Palmer, was dead, and invites him, if living, or any subsequent assignee that might be appointed, to come in, &c. It was ascertained that Palmer was dead, and Hackett was appointed successor to Palmer, May 19, 1851, and on the 30th day of that month made himself a party to Benjamin C. Clark's bill, by petition in the nature of an original bill. Other creditors came in, likewise, but all of them after the thirty days had expired.

It is insisted that Benjamin C. Clark, as a general creditor of the bankrupt, had no standing in court, his debt having been dis-

charged by the certificate of bankruptcy. Secondly, that Clark had never made himself a party to the bankrupt proceedings, by proving his debt, and therefore Hackett must stand on his own bill, and cannot connect himself with that of Clark.

3. " That the circuit court of the District of Columbia had no jurisdiction in this case, except that conferred by said 8th section. The fund was in the treasury of the United States, and the parties were non-residents. Inasmuch as Hackett, the assignee, had not given the bond nor filed the notice specified in said 8th section, upon which the jurisdiction of the court was to attach, the bill should have been dismissed."

The bankrupt is personally discharged from his debts, and so are his future acquisitions; but, the property and rights of property which vested in the assignee are subject to the creditors of the bankrupt, as they were liable in his hands before he applied for the benefit of the act; and the money in controversy was held in trust for the creditors, in whatsoever hands it was found. Benjamin C. Clark was a *cestui que trust*, and the treasury a stakeholder between Ferdinand Clark and his creditors; Palmer, the assignee, had died, and there being no trustee, the creditor had a right to file a bill and detain the fund for the creditors generally, to be administered by an assignee subsequently appointed by the bankrupt court.

The circumstance that Benjamin C. Clark has not proved his debt, and made himself a party to the proceedings in bankruptcy, is immaterial; the proof that debts were owing by Ferdinand Clark can be made at such times as the bankrupt court may prescribe by its rules and orders; and we are not aware that any objection can be interposed to reject Benjamin C. Clark's claim in the bankrupt court of New Hampshire. All the creditors seem to be in the same condition, no one having proved his debt. Benjamin C. Clark having the right to sue and detain the fund in the treasury, Hackett could properly come in, and make himself a party to the proceeding.

It is also insisted that this action is barred by the 8th section of the bankrupt law, which provides that no suit shall be maintainable against any person claiming an adverse interest touching property or rights of property surrendered by the bankrupt, unless the same shall be brought within two years after the declaration and decree in bankruptcy, or after the cause of action shall first have accrued.

The interest adversely claimed, and which the statute protects, if not sued for within two years, is an interest in a claimant other than the bankrupt; but, supposing that Ferdinand Clark had been placed in that condition, as to the fund in the treasury, by his pretended purchase of his own assets, yet as no cause of

action accrued to the assignee in bankruptcy against Clark, until he got possession of the money, and as he never held the fund adversely, it follows that the act does not apply; but if it did, the fund had n' existence till the award was made, which was only thirty days before the suit was brought. We order that the decree of the circuit court be affirmed.

## *Order.*

This cause came on to be heard on transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court that the decree of the said circuit court in this cause be and the same is hereby affirmed, with costs.